# In the United States Court of Federal Claims

No. 23-2047
(Filed Under Seal: June 11, 2024)
Reissued: July 2, 2024[1]

|  |  |
|---|---|
| ASSOCIATED ENERGY GROUP, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| KROPP HOLDINGS, INC., | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*Todd John Canni*, Baker & Hostetler LLP, Los Angeles, CA, for plaintiff.

*John Hugh Roberson*, U.S. Department of Justice, Commercial Litigation Branch, Washington, D.C., for defendant.

*Craig Alan Holman*, Arnold & Porter Kaye Scholer LLP, Washington, D.C., for defendant-intervenor.

## MEMORANDUM OPINION

***SMITH*, Senior Judge**

This case is before the Court on the parties' Cross-Motions for Judgment on the Administrative Record and defendant, the United States of America, and defendant-intervenor, Kropp Holdings, Inc.'s ("KHI's"), respective Motions to Dismiss.  Plaintiff, Associated Energy Group, LLC ("AEG"), challenges the award by Defense Logistics Agency – Energy ("DLA" or the "Agency") for a second twelve-month sole-source bridge contract (the "Bridge Contract") to KHI for its Aviation Into-Plane Reimbursement Card® ("AIR Card") and the Ships' Easy Access Card® ("SEA Card") programs.  *See generally* Plaintiff's Motion for Judgment on the

---

[1]      An unredacted version of this opinion was issued under seal on June 11, 2024.  The parties were given an opportunity to propose redactions, and those redactions and revisions are included herein.

Administrative Record, ECF No. 32 [hereinafter Pl.'s MJAR]; Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record, Motion to Dismiss, and Cross-Motion for Judgment on the Administrative Record, ECF No. 38 [hereinafter Def.'s Mot.].

Both the AIR Card and the SEA Card allow military and civilian agencies to acquire petroleum products and services for the United States Department of Defense. *See* Administrative Record 1253, ECF No. 28 [hereinafter AR]. As part of the new contract cycle, DLA issued two short-term sole-source awards to KHI—an initial twelve-month contract extension and the Bridge Contract—while DLA sought procurement of long-term AIR Card and SEA Card services under Solicitation No. SPE608-21-R-0230 ("Solicitation"). Only the Bridge Contract, not the initial contract extension nor the long-term procurement, is in question here. AR 205. Beyond being the twice sole-source awardee, KHI is additionally the incumbent for providing long-term AIR Card and SEA Card services under DLA contract No. SP0600-12-C-0359. AR 1253.

AEG acknowledges that it "did not protest DLA's" initial contractual extension; however, it claims that the Agency has unfairly "***hand[ed] out sole-source awards like lollipops***" to KHI because DLA failed to manage the Solicitation on a realistic timeline. *See* Plaintiff's Opposition to Defendant's and Defendant-Intervenor's Cross-Motions of Judgment on the Administrative Record and Motions to Dismiss and Reply Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record at 7, ECF No. 42 [hereinafter Pl.'s Opp.] (emphasis in original); *see also* Pl.'s MJAR at 11. Specifically, AEG claims that DLA's six-month transition period from procurement award to contract implementation did not allow for the Government Accountability Office ("GAO") and this Court to resolve bid protests or to allow DLA to implement corrective actions. *See* Pl.'s MJAR at 11. Accordingly, AEG fears DLA will award KHI a *third* sole-source award unless the Court orders a permanent injunction blocking enforcement of both the Bridge Contract and any future bridge contracts before DLA completes the Solicitation. *See* Complaint at 32, ECF No. 1 [hereinafter Compl.].

Defendant and KHI counter that AEG lacks standing to pursue its claims against DLA's procurement process for two main reasons. Def.'s Mot. at 1–2, 25–33; Defendant-Intervenor Kropp Holdings, Inc.'s Motion to Dismiss, Cross Motion for Judgment on the Administrative Record, and Response to Plaintiff's Motion for Judgment on the Administrative Record at 1–3, 19–26, ECF No. 39-1 [hereinafter KHI's Mot.]. First, AEG violated *Digitalis Education Solutions, Inc. v. United States*, 664 F.3d 1380 (Fed. Cir. 2012), when it failed to announce itself as an actual or prospective bidder to the Bridge Contract by not submitting a capability response before the August 15, 2023, deadline to DLA's Notice of Intent to Issue a Sole-Source Award ("Sole-Source Notice"). *See* Def.'s Mot. at 1–2, 25–33; KHI's Mot. at 1–3, 19–26; *see also* Pl.'s Opp. at 21–30; Defendant's Reply in Support of its Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record at 1–12, ECF No. 43 [hereinafter Def.'s Reply]; Defendant-Intervenor's Reply in Support of Its Motion to Dismiss and Cross Motion for Judgment on the Administrative Record at 1–9, ECF No. 44 [hereinafter KHI's Reply]. Second, AEG lacks an economic interest in the procurement because it cannot perform the sole-source

contract's requirements. *See* Def.'s Mot. at 1–2, 25–33; KHI's Mot. at 1–3, 19–26; *see also* Pl.'s Opp. at 21–30; Def.'s Reply at 1–12; KHI's Reply at 1–9, ECF No. 44. Additionally, by not contesting the second sole-source contract prior to the Notice of Intent's deadline, AEG has waived any right to contest the Bridge Contract's terms. *See* Def.'s Mot. at 29–33; KHI's Mot. at 25–26; *see also* Pl.'s Opp. at 28–30; Def.'s Reply at 9–12; KHI's Reply at 7–9.

For the below reasons, the Court determines the following: AGE's Motion for Judgment on the Administrative Record is found as moot; defendant's Motion to Dismiss is granted; defendant's alternative Cross-Motion for Judgment on the Administrative Record is found as moot; KHI's Motion to Dismiss is granted; and KHI's alternative Cross-Motion for Judgment on the Administrative Record is found as moot.

## I.    Background

### A.    Applicable Facts[2]

On March 11, 2021, expecting the expiration of KHI's incumbent contract with DLA on December 31, 2022, DLA posted a Request for Information onto the Systems for Award Management website ("SAM.gov"), seeking to identify interested vendors and potential solutions for an upcoming solicitation on the AIR Card and SEA Card programs. AR 1, 11. DLA received four responses from AEG, KHI, Stonewin International LLC, and U.S. Bank. AR 15, 50, 74, 82. Only KHI—the incumbent contractor—possessed an immediately available network to provide services for both programs. AR 68; *see also id.* at 1253.

On June 22, 2021, after reviewing and incorporating the information gathered from the Request for Information, DLA issued the initial Solicitation with a closing date of August 6, 2021, on SAM.gov. AR 205; *see also id.* at 152, 182, 201, 204. The period of performance for the contract was July 1, 2022, through June 30, 2025, with an anticipated six-month transition period from January 1, 2022, through June 30, 2022. AR 207. DLA incorporated this six-month on ramp to allow for a smooth yearlong transition in preparation for the expiration of KHI's prior contract at the end of 2022. *See* Def.'s Mot. at 7. On July 29, 2021, DLA issued Amendment 1 to revise the closing date to August 19, 2021. AR 614.

On December 8, 2021, after amending the Solicitation several times for administrative issues unrelated to the present matter, DLA issued Amendment 10 that, in part, kept a six-month transition period but updated the projected start date for the transition period to July 1, 2022, with full performance to begin on January 1, 2023. AR 640–41; *see also id.* at 631–34 (discussing unrelated amendments).

---

[2]    While this procurement has a long factual and procedural history, only a handful of facts are necessary to understanding the disposition and resolution of this case; only those facts are discussed and applied herein.

On March 4, 2022, DLA communicated to AEG, among other issues, ██████ ███████████████████████████████████.  AR 939, 956. ████████████████████████████████████████████████████████████ ██████████ AR 956. ███████████████████████████████████████ █████████████████████  *Id.*  On June 3, 2022, AEG was awarded the contract.  AR 1021.

On July 5, 2022, KHI filed a post-award protest at GAO.  AR 1031.  On July 25, 2022, after reviewing KHI's protest, DLA's contracting officer deemed corrective action necessary, as explained in her Memorandum for the Record.  AR 1098.  According to the contracting officer, the Agency needed to "[r]easssemble the technical, past performance, and price evaluation teams to reevaluate KHI and AEG's proposals."  AR 1101.  On July 26, 2022, DLA filed a Notice of Corrective Action based on these recommendations with the GAO, resulting in a dismissal of KHI's protest on July 29, 2022.  AR 1103.

On September 26, 2022, the contracting officer alerted DLA's Senior Procurement Executive of the risk that KHI's incumbent contract might "lapse" unless the Agency modified KHI's existing contract to provide for "[a] 6-month extension (January 1, 2023[,] to June 30, 2023), with a 6-month option (1 July 2023[,] to December 31, 2023)."  AR 1246–48, 1250, 1262 (modified contract).  AEG "did not protest" this award.  *See* Pl.'s MJAR at 11.

On May 14, 2023, after months of several KHI pre-award protests filed at the GAO regarding matters unrelated to the resolution of this case, DLA exercised its six-month option extending KHI's contract.  AR 1328.  That same month, believing KHI to be the only responsible source available for a seamless transition from KHI's incumbent contract to a short-term contract that would expire once the Solicitation was complete, DLA began negotiations with KHI about the then nascent Bridge Contract.  AR 1330–31, 1500–02.  The Bridge Contract would include a six-month base contract from January 1, 2024, to June 30, 2024, and a six-month option period through December 31, 2024.  AR 1451.  On July 31, 2023, DLA posted a "sources sought" notice on SAM.gov to confirm KHI was the only responsible source.  AR 1450. If no other responsible source existed, then Bridge Contract would be awarded to KHI; but if another source existed, the offeror needed to submit a capability statement by August 15, 2023, to be considered.  *See* Def.'s Mot. at 18–19.  Neither AEG nor any other offeror responded to the notice by the deadline.  AR 1451, 1504.  On August 22, 2023, DLA awarded the Bridge Contract to KHI.  AR 1498.

On October 30, 2023, AEG sent a letter to DLA's contracting officer, wherein the offeror complained that awarding the Bridge Contract to KHI was improper because AEG should have been "afforded . . . [an] opportunity to respond."  AR 3176–77.  On November 8, 2023, AEG contacted the United States Department of Justice of its intention to file this case.  *See* Def.'s Mot. at 23.

**B.      Procedural History**

On November 29, 2023, AEG filed its Complaint in this Court alleging two interconnected points against DLA.  *See generally* Compl.  First, DLA improperly granted the Bridge Contract without affording AEG the opportunity to compete for the contract.  *Id.* at 1–9.  Second, the Bridge Contract was a result of DLA's failure to manage the Solicitation on a realistic timeline.  *Id.*  Second, because DLA is "hand[ing] out sole-source awards like lollipops," a permanent injunction—both blocking enforcement of both the Bridge Contract and blocking any future bridge contracts before completing the long-term Solicitation—is warranted. *See id.* at 32; Pl.'s Opp. at 7 (emphasis removed).

On December 15, 2023, defendant filed the Administrative Record.  *See generally* AR. On January 12, 2024, AEG filed its Motion for Judgment on the Administrative Record.  *See generally* Pl.'s MJAR.  On February 7, 2024, defendant filed its Response to Plaintiff's Motion for Judgment on the Administrative Record, Motion to Dismiss, and Cross-Motion for Judgment on the Administrative Record.  *See generally* Def.'s Mot.  That same day, KHI filed its Motion to Dismiss, Cross Motion for Judgment on the Administrative Record, and Response to Plaintiff's Motion for Judgment on the Administrative Record.  *See generally* KHI's Mot.  On March 2, 2024, AEG filed its Opposition to Defendant's and Defendant-Intervenor's Cross-Motions of Judgment on the Administrative Record and Motions to Dismiss and Reply Brief in Support of Plaintiff's Motion for Judgment on the Administrative Record.  *See generally* Pl.'s Opp.  On March 15, 2024, defendant filed its Reply in Support of its Motion to Dismiss and Cross-Motion for Judgment on the Administrative Record.  *See generally* Def.'s Reply.  Also on that day, KHI filed its Reply in Support of Its Motion to Dismiss and Cross Motion for Judgment on the Administrative Record.  *See generally* KHI's Reply.

On March 27, 2024, AEG filed an unopposed Motion for a Decision on the Briefs.  *See generally* Unopposed Motion for Decision on the Briefs, ECF No. 45.  On March 28, 2024, the Court granted AEG's request.  *See* Order Granting Plaintiff's Unopposed Motion or Decision on the Briefs, ECF No. 46.  On April 15, 2024, after carefully reviewing the merits, the Court issued an order finding as moot AEG's Motion for Judgment on the Administrative Record; granting defendant's Motion to Dismiss; finding as moot defendant's Cross-Motion for Judgment on the Administrative Record; granting KHI's Motion to Dismiss; and finding as moot KHI's Cross-Motion for Judgment on the Administrative Record.  *See* Order, ECF No. 47.  The Court now issues its opinion based on its earlier judgment.

**II.      Standard of Review**

The Tucker Act grants this Court jurisdiction over protests where "an interested party [is] objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  If a protestor is not "interested" in the procurement—either because it did not respond to agencies notices by the proscribed deadline, *see Digitalis Educ. Sols.*, 664 F.3d at 1385, or because it admits it is "[in]capable of performing

5

the full requirements of the challenged procurement," *see IHS Glob. Inc. v. United States*, 106 Fed. Cl. 734, 742 (2012)—then the protestor lacks Tucker Act standing to pursue its claims and its case must be dismissed for failure to state a claim under Rule 12(b)(6) of the Rules of the Court of Federal Claims.  *See CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023).  Equally, a protestor waives its claims under the Tucker Act if it fails to object to a procurement's "terms 'prior to the close of a bidding process.'"  *See Bannum, Inc. v. United States*, 779 F.3d 1376, 1380 (Fed. Cir. 2015) (quoting *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007)).

## III.   Discussion

Inaction, as equally as action, can produce consequences.  By failing to protect its rights during the Bridge Contract's procurement, AGE's inaction blocks its claims before this Court.  Specifically, AEG did not respond to DLA's Sole-Source Notice, did not exemplify an ability to perform the Bridge Contract's requirements, and did not contest the terms of the Bridge Contract itself.  For these reasons, AEG has failed to make itself an actual or prospective bidder, failed to show it has an economic interest in the Bridge Contract, and waived its rights to contest against the Bridge Contract's terms, respectively.  Consequently, the Court grants both defendant and KHI's respective Motions to Dismiss—making all Cross-Motions for Judgment on the Administrative Record moot.

### A.   AEG is Neither an Actual or Prospective Bidder of nor Economically Interested in the Bridge Contract.

"'[T]o come within the Court of Federal Claims's § 1491(b)(1) bid protest jurisdiction,' a protestor must . . . [be] . . . an interested party."  *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 674 (2016) (quoting *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)).  To be so, "a protestor must satisfy a two-part test."  *Id.*  "First, the protestor must demonstrate that it is an actual or prospective bidder."  *Id.* (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006)).  "Second, the protestor must demonstrate that it has a direct economic interest in the procurement."  *Id.* (citing *Rex Serv. Corp.*, 448 F.3d at 1307; *Weeks Marine, Inc.*, 575 F.3d at 1359).  AEG, as discussed below, has satisfied neither part.

#### 1.   AEG is Not an Actual or Prospective Bidder of the Bridge Contract.

AEG, as defendant and KHI point out, did not submit a capability statement in response to DLA's Sole-Source Notice.  *See* Def.'s Mot. at 26; KHI's Mot. at 25; *e.g.*, Compl. at 9–11.  That fact is fatal to AEG's claims.  *See Digitalis Educ. Sols.*, 664 F.3d at 1385 ("hold[ing] that in order to be an actual or prospective bidder, [for a sole-source contract], a party must submit a statement of capability during the prescribed period.").  DLA required any "[i]nterested parties [to] identify their capability by responding to this [Sole-Source Notice] by August 15, 2023[,] at 10 AM (EST)."  AR 1451.  But the Agency "received no response to" the notice, including from AEG.  AR 1502.  Indeed, AEG admits it "did not respond" to the Sole-Source Notice.  *See* Pl.'s

Opp. at 24.  Still, AEG believes this admission "should not be used to deprive it of standing" for two reasons.  *Id.*

First, AEG indicates that if other potential interested offerors had responded to the Sole-Source Notice, it would have responded itself.  *Id.* at 2–3.  This position is nonsensical, for one's rights cannot be predicated upon another's willingness to pursue its own rights, especially in this context, where an individual offeror becomes an interested party by informing the agency of its disagreement with the procurement process.  *See Proxtronics Dosimetry, LLC*, 128 Fed. Cl. at 675–76 (describing that the "Court of Federal Claims case law indicates that to qualify as an actual or prospective offeror, a party that disagrees with a procuring agency's decision not to conduct a competitive procurement must so advise the agency, either by responding to one of the agency's notices concerning the procurement or by submitting a proposal.") (relying on *Infrastructure Def. Techs., LLC v. United States*, 81 Fed. Cl. 375, 386 (2008)).  Unsurprisingly, this point is why *Digitalis* requires a bidder to submit a capability statement by the prescribed period.  Doing so allows the Agency to be "advised" on how its actions have possibly infringed on AEG's rights.  *Id.*; *e.g.*, *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 239, 251 (1999) ("This procedure affords the agency an opportunity to reconsider its sole-source procurement decision, while allowing only serious potential offerors to challenge the agency's sole-source decision." (internal quotation marks and citation omitted)).  Yet, AEG did not fulfil this requirement, causing DLA to award the Bridge Contract to KHI, and resulting in AEG's claims being barred for lack of standing.  AR 1451, 1502, 2923; *see also Digitalis Educ. Sols., Inc.*, 664 F.3d at 1385.

Likely, AEG is aware this precedent blocks its claims because on October 30, 2023, three months after DLA requested responses in the Sole-Source Notice, AEG sent DLA a letter in which it "expressed its disappointment with DLA's second sole-source award."  AR 3176; Compl. at 9–11.  But letters of disappointment after the notification deadline are insufficient to establish standing when "a party *must submit* a statement of capability *during the prescribed period*."  *Digitalis Educ. Sols., Inc.*, 664 F.3d at 1385 (emphasis added).  Instead, offerors must heed requirements, not just complain about them after a procurement's finalization.  *Id.*

Second, AEG argues that DLA should have assumed it was an actual or prospective bidder of the Bridge Contract because that procurement "***directly relates***" to the Solicitation.  *See* Pl.'s Opp. at 22 (emphasis in original).  But AEG foreclosed this argument because it represented, in the sister case involving the Solicitation, that it was "not directly related to any pending or previously filed case(s) in the United States Court of Federal Claims," including the present dispute.  *See* Def.'s Reply at 4 (citing *Associated Energy Grp., LLC v. United States*, No. 24-241, Cover Sheet (Feb. 15, 2024), ECF No. 1)[3]; *see also generally Associated Energy Grp., LLC v. United States*, No. 24-241, 2024 WL 1499759 (Fed. Cl. Apr. 2, 2024).  Yet, even if AEG had not foreclosed this argument, it would still be unavailing because a plaintiff cannot automatically be a prospective bidder simply because it participated in related procurements.

---

[3]     The Cover Sheet is attached as Exhibit A.

*E.g.*, *Rex Serv. Corp.*, 448 F.3d at 1308 ("We reject [the] argument that [plaintiff] was a prospective bidder because it was a named source for thumbwheel switches and supplied the department with those parts under other contracts. This may have influenced its business decision not to submit a bid, but cannot overcome the failure to meet the prospective bidder requirements." (internal quotation marks omitted)). In the end, AEG did not submit a capability statement in response to the Sole-Source Notice. *Id.*; *see also* AR 1451, 1502, 2923. That failure alone prevents AEG from qualifying as actual or prospective bidder of the Bridge Contract—resulting in AEG not being an interested party for standing purposes. *See Proxtronics Dosimetry, LLC*, 128 Fed. Cl. at 674; *Digitalis Educ. Sols., Inc.*, 664 F.3d at 1385; *see also MCI Tele. Corp. v. United States*, 878 F.2d 362, 365 (Fed. Cir. 1989) ("[T]he opportunity to qualify either as an actual or prospective bidder ends when the proposal period ends.").

### 2. AEG is not Economically Interested in the Bridge Contract.

Even if AEG was an actual or prospective bidder for the Bridge Contract, its admissions preclude a finding of economic interest. *See, e.g.*, Pl.'s Opp. at 22–23 ("AEG . . . is not capable of performing the [Bridge Contract's] combined services immediately without time for a transition and an interruption in services."); *id.* at 24 ("AEG is interested in providing interim services but is not 'capable of performing without any disruption to the card transaction services' and would need a pre-award or post-award transition period to meet the transition requirements of the AIR and SEA Card® programs unless waived by DLA"). This conclusion is so because to have an economic interest, AEG "must demonstrative prejudice." *See Trace Sys. Inc. v. United States*, 165 Fed. Cl. 44, 68 (2023) (citation omitted). Meaning if AEG cannot "establish that it could compete for the contract if the bid process were made competitive," it is not economically interested in the Bridge Contract. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1334 (Fed. Cir. 2001) (internal quotations omitted). Being admittedly "[in]capable of performing the full requirements of the challenged procurement," *see IHS Glob. Inc.*, 106 Fed. Cl. at 742, AEG has "fall[en] short of meeting [its] burden," *see Trace Sys. Inc.*, 165 Fed. Cl. at 68 ("With that in mind, it was jurisdictionally critical for Plaintiff to allege and, once challenged . . . , prove, that it could provide . . . services required by the bridge contract beginning on June 10, 2022, in order to have standing to challenge the agency's decision to award the bridge contract on a sole-source basis."). Consequently, AEG is not economically interested in the Bridge Contract, requiring the Court to dismiss AEG's claims for this reason as well.

### B.    AEG Has Waived its Rights to Contest the Terms of the Bridge Contract.

Putting aside that AEG is neither an actual or prospective bidder of nor economically interested in the Bridge Contract, AEG has also waived its rights to contest the Bridge Contract's terms by not responding before the Agency's deadline to the Sole-Source Notice (or filing a protest at this Court or the GAO), and by possessing full knowledge of its issues with the Sole-Source Notice itself and not objecting before the posted deadline. *See* KHI's Mot. at 25–26;

KHI's Reply at 7–9; Def.'s Mot. at 29–33; Def.'s Reply at 9–11.  Consequently, AEG's claims must be dismissed for either reason.

      **Failing to Respond to the Sole-Source Notice.**  As established above, AEG never responded to the DLA's Sole-Source Notice by the Agency's August 15, 2023, deadline.  *See supra* at 6 ("AEG, as defendant and KHI point out, did not submit a capability statement in response to DLA's Sole-Source Notice.") (citations omitted).  This failure to respond by the deadline results in "no other conclusion under the facts of this case": AEG's claims are waived.  *Proxtronics Dosimetry, LLC*, 128 Fed. Cl. at 677 ("[D]efendant contends that plaintiff waived its right to protest . . . by failing to respond to either the S[ource] S[ought] S[ynopsis] or the N[otice] O[f] I[ntent] to award a sole-source contract, or to file a protest, before the Air Force awarded the contract.  The court agrees.") (relying upon *Bannum, Inc.*, 779 F.3d at 1380, which held "[a] bidder that challenges the terms of a solicitation . . . must demonstrate that it objected to those terms 'prior to the close of the bidding process.' If it cannot do so, the bidder 'waives its ability to raise the same objection afterwards in a § 1491(b) action.'" (quoting *Blue & Gold Fleet, L.P.*, 492 F.3d at 1315)).  Thus, for this reason alone, AEG's claims are waived.

      **Possessing Full Knowledge of the Sole-Source Notice.**  Trying to escape reality of waiver, AEG latches onto the limited exception of waiver.  *See* Pl.'s Opp. at 28–30 (citing *Red River Commc'ns, Inc. v. United States*, 109 Fed. Cl. 497, 510 (2013), which explained that a waiver does not apply when a protestor lacked "full knowledge of the terms of the solicitation.").  According to AEG, wavier is inapplicable because it lacked knowledge of "whether DLA would receive more than one eligible interested offeror in response to" the Sole-Source Notice until bidding finalized.  *Id.* at 29.  But the facts do not support AEG's claim of ignorance—especially when AEG's merit arguments are predicated on the very terms of the Sole-Source Notice, instead of on extracontractual events.  *E.g.*, Pl.'s Opp. at 11 (arguing that "[t]he [Sole-Source Notice] confirms DLA did not design or structure the requirements underlying the [Sole-Source Notice] to promote competition.  Rather, the [Sole-Source Notice] required interested offerors to be able to perform without a transition period a disruption in on-going services being performed by KHI.  DLA knew that only KHI could satisfy its requirements as proven by" the Bridge Contract's procurement).  Moreover, AEG knew the Bridge Contract was going to be awarded to KHI to maintain proper administration of these financial services.  *See* AR 1450–51.  Frankly, AEG cannot simultaneously plead obliviousness while also exemplifying a clear-eyed understanding of the Sole-Source Notice's terms.  Either AEG understood the Bridge Contract was for KHI or it misunderstood the Sole-Source Notice's purpose; both realties cannot exist simultaneously.  Unsurprisingly, the facts (as well as AEG's *own* arguments) illustrate that AEG possessed full knowledge of the Bridge Contract's terms and purpose.  *See id.*; Pl.'s Opp. at 11.  Finding this, AEG, again, had an obligation to notify DLA of the Sole-Source Notice's deficiencies; because it failed to do so, AEG has waived its claims.  *See Digitalis Educ. Sols., Inc.*, 664 F.3d at 1385; *Proxtronics Dosimetry, LLC*, 128 Fed. Cl. at 677.

## IV.    Conclusion

AEG's inaction is not rewardable.   Consequently, based on the foregoing, AEG's Motion for Judgment on the Administrative Record is **FOUND AS MOOT**, *see* ECF Nos. 32, 42; defendant's Motion to Dismiss is **GRANTED**, *see* ECF Nos. 38, 43; defendant's alternative Cross-Motion for Judgment on the Administrative Record is **FOUND AS MOOT**, *see* ECF Nos. 38, 43; KHI's  Motion to Dismiss is **GRANTED**, *see* ECF Nos. 39, 44; and KHI's alternative Cross-Motion for Judgment on the Administrative Record is **FOUND AS MOOT**, *see* ECF Nos. 39, 44.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge